Henry A. Tegtmeyer, Appellant, v. Axel Nordlund, Appellee.'

Gen. No. 34,437.

248

Heard in the first division of this court for the first district at the June term, 1930. ▮▮▮▮▮▮ Opinion filed December 1, 1930.

COLBY, MEYER, BRISGALL & RITMAN, for appellant.

JOHN J. SONSTEBY and JOSEPH J. BERZIN, for appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Plaintiff appeals from an adverse judgment in an action in which he seeks to recover on a promissory note dated March 24, 1926, due four months after date, for $2,500, to the order of Phil J. Boller.

February 2, 1928, plaintiff had judgment by virtue of the power of attorney to confess judgment in the note. September 26, 1928, defendant filed a petition alleging in substance that the note was delivered conditionally without consideration. Thereupon the judgment by confession was vacated and defendant given

leave to plead. The defendant pleaded that the note was executed by him without any consideration and that plaintiff was not a bona fide holder of the same. Upon trial the jury returned a verdict for the defendant, and plaintiff appeals from the judgment on this verdict.

Upon trial it was stipulated that plaintiff obtained the note when it was past due and that the same defenses were available as if the note was still in the hands of the payee, Boller.

Boller, the defendant Nordlund and ten other men were directors of the Milwaukee Western Trust & Savings Bank. This was the successor to another bank and as such successor had taken about $49,000 of bad paper as assets, carried on its books at $30,000. The bank examiner objected to this paper and requested that it be removed from the assets of the bank. About March 10, 1926, the directors of the bank, including Boller and the defendant, had a meeting at which a plan was proposed whereby the bad paper could be removed. It was agreed that three of the directors would raise $10,000 each with which to buy the bad paper at $30,000. Each of these three men so raising this money in cash would receive three notes of $2,500 each from three other members of the board of directors, so that the twelve directors so contributing would become the owners of the $49,000 of bad paper and, if and when collected, each would share to the extent of one-twelfth in the amount collected. Boller was one of the three men to raise $10,000.

There is evidence that defendant objected at the meeting to signing a note, but subsequently, when the note was brought to his home by a Mr. Leo Michael, a director, he signed it although apparently with reluctance. Defendant was permitted to testify that he signed it upon the representation of Michael that "the bank will take care of the note when it comes due." On the other hand, Michael testified that he never told

defendant that the bank would pay the note when it became due nor that defendant would not have to pay the note. To carry out this agreement Boller made out his personal check, payable to defendant, for $2,500, which was deposited to defendant's account in the bank and the defendant's check for a like amount was delivered to Boller. When the note became due and demand for payment was made, defendant refused to pay.

These facts tend to show a consideration for the execution and delivery of the note. The essence of the agreement was the purchase by the directors, including defendant, of the bad paper of the bank. Defendant's interest in this paper would be a sufficient consideration. Furthermore, it was of interest to defendant, as a stockholder and director of the bank, to get rid of the bad assets of the bank and to substitute assets that would meet with the approval of the examiner. The contribution made by defendant along with the other directors, would at least postpone, if not prevent, a loss following the closing of the bank.

"A benefit to the promisor or a loss or detriment to the promisee . . . may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered or undertaken by the other" . . . . and "may consist in a benefit to a third person." 3 R. C. L., par. 126, pp. 930, 931.

Defendant, however, contends that under the rule laid down in *Straus v. Citizens State Bank*, 164 Ill. App. 420, approved by the Supreme Court in 255 Ill. 185, there was no consideration. The facts in that case can easily be distinguished from those before us. There it clearly appears that the note in question was given merely as an accommodation and wholly without consideration. The facts in this case are more nearly like those in *State Bank of West Pullman v. Hovnanian*, 250 Ill. App. 144. There, as here, the

note was given by one of the directors to make good an impairment of the bank assets due to the inclusion therein of certain worthless paper. It was held that such note was not for accommodation but was given for a valid consideration for the purpose of making good the impairment of the bank's capital and thus restore its solvency and avoid the necessity of levying an assessment against the stockholders. It was also so held in cases involving similar facts in *Liberty Trust Co. v. Price,* 259 Mass. 596; *Farmers' Equity Co-op. Ass'n v. Tice,* 122 Kan. 127; *Queensboro Nat. Bank of City of New York v. Kelly,* 221 N. Y. S. 703.

We are of the opinion that parol testimony to the effect that defendant was told that he would not have to pay the note was inadmissible as tending to vary the terms of the written instrument. The note says, "Four months after date I promise to pay." The testimony that it was stated that the bank would take care of it tends to contradict this agreement. In *Handley v. Drum,* 237 Ill. App. 587, the court considered this question with a thorough study of many cases. We are in accord with the following statement in that opinion:

"It is elementary that the defendants could not show by parol, even as against the payee of the note, that the parties had an understanding that the contract in fact was conditional. It is a fundamental part of the law of contracts, to which there are very few exceptions, that a party to a written contract may not contradict the terms of that contract by parol. But it is equally well established that such a party may show that the contract claimed to exist was in fact never fully executed,—that although it was signed by him, he never delivered it or that there was merely a conditional delivery and that the condition has failed. In so doing, the written terms of the contract are not varied by parol but the showing made is merely to the effect that the contract never was com-

pletely executed." Citing *Northwestern Consol. Milling Co. v. Sloan*, 232 Ill. App. 266, and other cases.

Where there is a failure of consideration, evidence is admissible to show the circumstances under which the note was executed and delivered as tending to show a conditional delivery and that the condition has failed; but where there is a valid consideration the payor will not be heard to say that he had an understanding that the note was conditional.

Counsel for plaintiff complain of the conduct of the trial court in taking too active a part in the examination of one of his witnesses. We are inclined to agree that the asking of questions and the comments of the court were such as to incline the jury towards the defendant.

The plaintiff requested the court to give an instruction which, at some length, embodied the theory of plaintiff. The instruction in effect told the jury that if it believed that at the meeting of the board of directors they agreed that each of them should advance the sum of $2,500 to make up the total of $30,000 to be deposited in the Milwaukee Western Bank to take the place of certain assets then in the possession of that bank, to which the bank examiner had objected, and if it believed that, in pursuance of that agreement, the payee advanced $2,500 to the defendant, which sum the defendant immediately paid over to the Milwaukee Western Bank, there was a valuable consideration for the note. In substance, this was a correct statement of the law and we see no reason why it should not have been given.

The court gave an instruction, at plaintiff's request, that the burden of proof was upon the defendant and that "he must prove his case by a preponderance or greater weight of the evidence," and also gave an instruction, offered by defendant, to the effect that "if you find that the evidence is equally balanced, you should find the issues for the defendant." These in-

structions contradict each other and the jury cannot be presumed to know which instruction should be followed as the law. *People v. Emmel,* 292 Ill. 477. The instruction given at plaintiff's request was a proper statement of the law and the instruction given at the request of defendant does not state the law correctly. *Bemis v. Horner,* 165 Ill. 347. If the jury in this case should find the evidence to be equally balanced, it should find the issues for the plaintiff.

The court improperly gave an instruction tendered by defendant which undertook to define "bad faith" on the part of a purchaser of a negotiable instrument. As it was stipulated that defendant could make any and all defenses to the note as if the same were in the hands of Boller, this instruction had no place in the case and should not have been given.

For the reasons indicated we hold that the judgment should be reversed and the cause remanded for further proceedings consistent with what we have said in this opinion.

*Reversed and remanded.*

MATCHETT, P. J., and O'CONNOR, J., concur.